RACE SAFE SYSTEMS, INC. Plaintiff,

v.

INDY RACING LEAGUE and Delphi Corporation Defendants,

No. 02–CV–825.

United States District Court, N.D. New York.

March 18, 2003.

David M. Giglio, Esq., Utica, NY, for Plaintiff.

Thorn, Gershon, Tymann and Bonanni, LLP (Paul D. Jureller, Esq., of Counsel), Albany, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

This is a patent infringement lawsuit instituted by plaintiff Race Safe Systems, ("Race Safe") a New York corporation that was dissolved by proclamation on December 27, 2000. The corporate dissolution does not prevent Race Safe from bringing this action. Rule 17(b) of the Federal Rules of Civil Procedure applies to dissolved and active corporations, and it provides that, "[t]he capacity of a corporation to sue or be sued shall be determined

by the law under which it was organized." *Domino Media, Inc. v. Kranis,* 9 F.Supp.2d 374 (S.D.N.Y.1998), aff'd, 173 F.3d 843 (2d Cir.1999). States may provide that a dissolved corporation may maintain a suit to collect its assets, and the corporation will then have the capacity to sue in the federal courts even after dissolution. *Traverse Bay Area Intermediate School District v. Hitco, Inc.,* 762 F.Supp. 1298 (W.D.Mich.1991).

■■■ The courts in New York have consistently given effect to the statutory mandate that corporations "may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place." (N.Y. Business Corp. Law § 1006(a)); *Bowditch v. 57 Laight Street Corporation,* 111 Misc.2d 255, 257, 443 N.Y.S.2d 785, 787 (1981). This statute by its very terms applies regardless of the manner in which the dissolution was achieved and regardless of the nature of the existing corporate liabilities and obligations. *Douglas v. Perlstein,* 170 Misc. 561, 563, 10 N.Y.S.2d 479, 481 (1939); aff'd 256 A.D.2d 1084 (2nd Dept.1939). A conveyance of real property 16 years after dissolution has been recognized and upheld. *Jennings v. High Farms Corp.,* 28 A.D.2d 693, 281 N.Y.S.2d 110 (2nd Dept. 1967). Plainly, Race Safe may sue or be sued under the New York General Corporation Law, and its cause of action for injunctive relief and damages arising from the alleged infringement of its patent survived its dissolution. New York corporate statutes indicate that it is the public policy of the state to permit a corporation, even after dissolution, to properly wind up its affairs, and its right to sue for this purpose should not be forfeited by implication. *School of Music of Brooklyn Free Musical Society v. Moritt,* 145 N.Y.S.2d 645, 646 (1955).

On November 15, 1998, Richard J. and Donald D. Martell were issued a patent on a Pulse Coded Warning System for Racetrack. The patent covers a race condition alerting system used in automobile races and consists of a transmitter actuated by a flagman or other race official and a receiver unit in each race car. During a race, the transmitter sends a pulse encoded signal that operates a green light signal in each racer's receiver. If the race has to be stopped for any reason, a red signal light replaces the green one. If a wreck or other danger occurs on the race course that is not serious enough to stop the race, a yellow light replaces the green one, alerting each driver that a yellow flag or caution event has been called on the race course. This in car alert system supplements a flag and lighting system surrounding the race course which is activated when a caution incident has taken place. When the caution system is operating, the drivers must discontinue competitive racing and reduce speed until the caution period ends and the yellow lights turn green again.

Richard J. and Donald D. Martell assigned their patent rights to the plaintiff, Race Safe, which markets and sells the coded warning system for racetracks. Defendant Delphi Corporation is a Delaware corporation headquartered in Troy, Michigan. It is an immense multi-national corporation which, according to its media releases, has approximately 192,000 employees and operates 179 wholly owned manufacturing sites, 42 joint ventures, 53 customer centers and sales offices and 32 technical centers in 41 countries. Delphi's Dec. 9, 2002 press release projects 2003 revenue of $28 billion. Its United States operating subsidiary, Delphi Automotive Systems, LLC, designs and manufacturers assorted automotive parts that are marketed throughout the United States. Del-

phi also operates manufacturing plants located in Lockport and Rochester, NY.

Defendant Indy Racing League ("IRL") is an Indiana company situated in Indianapolis, Indiana. IRL organizes Indy Racing competitions and annually conducts approximately 15 races with its premier event being the Indianapolis 500. It last conducted a race event in New York state in 1998. In late 1997, IRL requested Delphi to design an in-vehicle system that would directly inform a race car driver if a yellow flag or caution event had occurred on the race course because of an accident or other danger.

In response to IRL's request, Delphi developed and manufactured a warning system named the Track Condition Radio or TCR, at its Kokomo, Indiana facility. IRL purchased 150 TCRs to be used in the vehicles competing in IRL's yearly car racing series.

Race Safe alleges that since early in 1998, Delphi has been making, using, selling and/or offering for sale in the United States a line of patent infringing warning systems for racetracks substantially identical in operation, construction and results to that of Race Safe's system; and that Delphi has continued to do so even after Race Safe notified it that it was infringing upon Race Safe's patent. Race Safe further contends that since 1998, defendant IRL has received royalties from national television companies that show the events IRL sponsors and markets to the general public; that during this same period IRL has been making, using, offering for sale and/or requiring its race car owners and other race personnel to use the TCR warning system that infringes on Race Safe' patent, at all IRL races; that IRL advertises and markets itself through the infringing use of Race Safe's warning system on national television; and that the winner of the 2002 winner of the Indianapolis 500 was determined as a result of the use of

defendant Delphi's infringing product by the IRL.

Currently before the court are two motions. The first is brought by defendant IRL which moves to dismiss itself from the case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or, in the alternative, to transfer venue to the Southern District of Indiana pursuant to 28 U.S.C. § 1631 and/or 28 U.S.C. § 1404. The second is brought by defendant Delphi and moves to transfer the case to the Southern District of Indiana pursuant to Federal Rule of Civil Procedure 28 U.S.C. § 1404(a). Both Delphi's Kokomo, Indiana facility and IRL's headquarters in Indianapolis, Indiana, are located in the Southern District of Indiana. Plaintiff has entered opposition to the Delphi motion only. The court will first consider ILR's motion to dismiss itself from the case and then the venue transfer motions.

Local Rule 7.1(b)(3) for the United States District Court Northern District of New York provides that where a properly filed motion is unopposed and the Court determines that the moving party has met its burden demonstrating entitlement to the relief requested therein, failure by the non-moving party to file any of the papers required by this rule shall be deemed by the court as consent to granting denial of the motion, unless good cause is shown.

 Defendant IRL contends that it was organized and is located in the State of Indiana and does not engage in the conduct required to trigger the New York long arm statute, New York Civil Practice Law and Rules § 302(a)(3), and obtain personal jurisdiction of IRL in the New York courts. The record does not show otherwise. Nor does the record demonstrate that plaintiff's claim arises out of or relates to IRL's contact with the state, or that IRL availed itself of the privileges of doing

business within the state so that IRL could reasonably foresee being haled into the state's courts. *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 242–3. Furthermore, at oral argument on this motion, plaintiff's counsel advised the court that plaintiff would not enter opposition to the motion. As plaintiff does not dispute the fact that this defendant lacks the necessary minimum state and federal contacts with New York to obtain personal jurisdiction, IRL's motion to dismiss the complaint as to it will be granted as unopposed.

## DISCUSSION

A defendant may move to transfer a civil case for the convenience of the parties and witnesses and in the interest of justice to any other district or division where it might have originally been brought. 28 U.S.C § 1404(a). The court may consider defendant's motion because this action could have been brought initially in the Southern District of Indiana. Defendant has the burden of establishing the propriety of transfer by a clear and convincing showing. *Factors Etc., Inc., v. Pro Arts, Inc.*, 579 F.2d at 215, 218 (2d Cir.1978); *Kanbar v. U.S. Healthcare, Inc.*, 715 F.Supp. 602, 604 (S.D.N.Y.1989). The court considers as relevant factors: (1) where the operative events occurred; (2) the location of relevant witnesses and documents; (3) the availability of process to compel attendance of unwilling witnesses; (4) any inconvenience to the parties or witnesses; (5) plaintiff's choice of forum; (6) the docket conditions of the transferor and transferee districts; and (7) the general interests of justice. *Pilates v. Pilates Institute*, 891 F.Supp. 175, 183 (S.D.N.Y.1995). Each factor need not be accorded equal weight. *Malone v. Commonwealth Edison Co.*, 2 F.Supp.2d 545, 547 (S.D.N.Y.1998). It is well established that determining whether a transfer is warranted pursuant to § 1404(a) lies within the broad discretion of the district court

and is determined upon notions of convenience and fairness on a case by case basis. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir.1992).

The place where the operative facts occurred is but one factor that is balanced to determine the appropriate venue for trial of the action. *Adams v. Key Tronic Corporation*, 1997 WL 1864 at *4, (S.D.N.Y. Jan. 2, 1997). While many of the operative facts in this case may have taken place in Indiana, the consideration of this factor also includes the relative ease of access to the sources of proof. *Wine Markets International v. Bass*, 939 F.Supp. 178, 182 (E.D.N.Y.1996) In this action, the track warning devices both consist of a transmitter that when switched on, will transmit a signal that operates warning lights mounted in a race car cockpit. The devices do not appear to be unwieldy or weighty. The relative ease of access to these sources of physical evidence as well as documentary evidence does not weigh strongly in favor of transfer. Both the documentary and physical evidence can be easily transported to New York, and the track warning devices should be readily available for inspection or demonstration in this district.

The convenience of party and non-party witnesses is particularly important, *Nieves v. American Airlines*, 700 F.Supp. 769, 772 (S.D.N.Y.1988).

Delphi's papers name four of its employees as the ones who saw the design, development, testing, manufacture and sale of the TCR. These individuals are Glen E. Gray, the Motor Sports Engineering Manager, Erskine Carter, the lead engineer responsible for the electronic design of the TCR, Larry Burkholder, the software engineer who designed the TCR software, and Brad Strout, the marketing manager who leads marketing and sales efforts for motor sports products. These individuals

obviously have intimate knowledge of the TCR and are well qualified to fully explain its workings and differences from plaintiff's Pulse Code Warning System. They are also under plaintiff's control and can testify in New York, if Delphi so desires. The ability to compel the attendance of witnesses is generally relevant only with respect to third party witnesses, since employees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship. *Praxair, Inc. v. Morrison Knudsen Corp.*, 2001 WL 118585 *4 (W.D.N.Y. Feb. 6, 2001) It does not seem that Delphi would suffer any oppressive or unusual expense or inconvenience in transporting its own employees to New York, where it does business. Moreover, there has been no showing that Race Safe's non-party witnesses will not appear voluntarily or that the use of videotape depositions will not be adequate in this case.

Race Safe has four witnesses, Richard and Donald Martell, the inventors of the Pulse Code Warning System, a representative of R & T Tax Service, plaintiff's accounting firm, and, most importantly, Barney Molldrem, Esq., the attorney who prosecuted the patents in question, however, Mr. Molldrem has advised plaintiff that he will not be available to testify in the Southern District of Indiana. All of these witnesses live and work in the Syracuse, NY, area.

Plaintiff's choice of forum. A defendant has the burden of making out a strong case for transfer ... plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the convenience of the witnesses or what might otherwise be the balance of convenience as between the parties. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624. (1950).

"A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other factors weigh strongly in favor of transfer." *Smart v. Goord*, 21 F.Supp.2d 309, 315 (S.D.N.Y. 1998). There is no requirement that there must be a "substantial" nexus between the chosen forum and the claim for the choice of forum to receive deference; rather there must be some material relation. Therefore, as long as there is some connection between the chosen venue and the facts or issues of the case, plaintiff's choice of forum will be disturbed only if the other factors weigh strongly in favor or transfer. *Adams v. Key Tronic Corp.*, 1997 WL 1864 (S.D.N.Y.1997). The court concludes that New York has some material relation to the facts and issues of this case, and plaintiff's choice of forum will not be disturbed.

Docket conditions are not a factor in the instant case because this court will provide a trial as soon as the parties are ready.

The interest of justice has been deemed the most important transfer factor. In considering the interest of justice component, a court may weigh the relative economic ability of the parties to proceed with the case in deciding a transfer motion. *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y.1991); *Vaughn v. American Basketball Association*, 419 F.Supp. 1274, 1277 (S.D.N.Y.1976)(The "relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider."). Where plaintiff was an individual and the defendant was a multimillion corporation, the court denied the transfer stating "[Defendant's] resources, when compared with those of the [plaintiff], warrant compelling it to defend here" *Bayless v. Dresser Industries, Inc.*, 677 F.Supp. 195, 197 (S.D.N.Y.1988).

Race Safe, for all intents and purposes, is a shell corporation, it has no employees and operates out of Richard Martell's home. Richard and Donald Martell are its only officers or shareholders. The record shows that the Martells have limited financial resources. They are both married, raising families, and have full time jobs in the medical and sales fields. They have counsel in the Northern District of New York, but have no funds to obtain counsel in the Southern District of Indiana. Through Race Safe they are suing a very large corporation which, by its own characterization, maintains a global presence, and does not suggest that the cost of litigating this action in the Northern District of New York would present an undue financial burden. To compel the Martell's to travel to Indiana to go forward with their lawsuit would merely increase the financial burden they already face, and might well compel them to abandon the litigation. A court should not find that transfer to a forum which is financially out of reach of a plaintiff in strained pecuniary circumstances to be in the interest of justice, and this court declines to do so here. Any added expenses that Delphi might incur as a consequence of defending itself in this district do not justify shifting those expenses to plaintiff.

It is the court's conclusion that it would neither be inconvenient nor unjust for defendant Delphi to be required to defend this action in New York. It is not unreasonable to expect Delphi to travel to New York to defend its corporate interests. Delphi would suffer no more harm than any defendant sued in a forum not of its own choosing, while plaintiff would be seriously prejudiced by a forum some distance away.

The interest of justice in this case requires venue to remain in the Northern District of New York.

Accordingly, defendant Delphi Corporation's motion to transfer this case to the District Court for the Southern District of Indiana is **DENIED**.

Defendant Indy Racing Leagues' motion to dismiss the complaint as to it is **GRANTED** as unopposed.

**IT IS SO ORDERED.**