**HERBERT LIMITED PARTNERSHIP,**
Plaintiff,

v.

**ELECTRONIC ARTS INC.; Sony Music Entertainment, Inc.; Sony Computer Entertainment America, Inc.; Random House, Inc.; Wal–Mart Stores, Inc.; Best Buy Company, Inc.; Compusa, Inc.; Electronics Boutique, Inc.; and KB Toys, Inc. Defendants.**

No. 03 Civ. 8610(VM).

United States District Court,
S.D. New York.

July 8, 2004.

Michael Barry Carlinsky, Margret Mary Caruso, Jeffrey A. Conciatori, Lara G. Corey, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY, for Electronic Arts, Inc., Random House, Inc., Sony Computer Entertainment, Inc., Sony Music Entertainment, Inc.

Ralph J. Sutton, Cowan, DeBaets, Abahams & Sheppard, LLP, New York, NY, for Ralph J. Sutton.

Anthony F. Lo Cicero, Nancy M. Dodderidge, Holly Pekowsky, Amster, Roghstein & Ebenstein LLP, New York, for Compusa, Inc.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Herbert Limited Partnership ("HLP") filed this action asserting, among several claims, copyright and trademark infringement in relation to several video games based on the science fiction book *Dune* and movie of the same name, and their written and film progeny (the "Dune Works"). Defendants now ask this Court, borrowing from the advanced techniques of the works at issue, to function as a space-folding navigator and transport this case to the Northern District of California. Upon review of the parties' submissions in this regard, the Court concludes that the convenience of the witnesses, the location of the operative facts, the preservation of judicial resources, and additional considerations discussed below favor litigation of this case in the Northern District of California. Accordingly, the motion to transfer is granted.

## I. FACTS AND PROCEEDINGS

HLP, a Washington State limited partnership, owns certain copyrights and trademarks in the Dune Works, a popular series of science fiction books written by Frank Herbert ("Herbert"). The works abound with incidents of political intrigue, adventure, environmentalism and mysticism that are set thousands of years in the future in a fictional universe featuring feuding noble houses, futuristic technologies, and individuals possessing supernatural powers.

In 1978 Herbert, then a resident of Washington State, granted to Famous Films Productions the motion picture and merchandising rights to the first book in the Dune series (the "Dune Novel") pursuant to a contract expressly governed by the laws of California (the "1978 Agreement"). The motion picture "Dune,"

based on the Dune Novel, was ultimately produced in 1984 (the "Dune Film").

Universal City Studios, Inc. ("Universal"), a California-based company, ultimately acquired the motion picture and merchandising rights to the Dune Film. In 1989, Universal sublicensed to Virgin Mastertronic, Inc. ("Virgin"), a California-based company, the right to develop video games based on the Dune Film (the "1989 Agreement"). The 1989 Agreement provided that it would be governed by the laws of the State of California and that "claims and/or lawsuits may be brought in Los Angeles County in [Universal's] sole discretion if both parties reside in the U.S.A." (1989 Agreement at 10, attached as Ex. E to Declaration of Jacob J. Schatz dated March 23, 2004 ("Schatz Dec.")) Virgin ultimately produced one video game under the 1989 Agreement.

In 1995, after the termination of the 1978 Agreement, HLP entered into an agreement (the "1995 Agreement") with Universal whereby HLP conveyed to Universal a limited, non-exclusive right to exploit the Dune Film. As part of the 1995 Agreement, HLP granted Universal merchandising rights in the Dune Novel to the extent that the book was presented in the Film. The 1995 Agreement expressly prevented Universal from using the Dune Novel in any other movie, television show or other derivative work. The 1995 Agreement provided that it was subject to California law and that both parties to the agreement "consent[ed] to the jurisdiction of the Courts of the State of California." (1995 Agreement at 4, attached as Ex. D to Schatz Dec.)

Defendant Electronic Arts, Inc. ("EA"), a Delaware Corporation with its principal place of business in California, ultimately acquired Virgin's rights to exploit the Dune Film for purposes of producing video games. In 1998 EA released an updated edition of Virgin's video game, now titled "Dune 2000," and in 2001, after EA and Universal renegotiated their existing licensing agreement, EA released a new game, titled "Emperor: Battle for Dune" (together with Dune 2000, the "Video Games").

EA and Prima Publishing ("Prima"), a California Corporation with its principal place of business in California, entered into an agreement in 1997 (the "Prima Agreement") under which Prima would produce written strategy guides to the Video Games (the "Strategy Guides"). The Prima Agreement and subsequent amendments were negotiated in California and are expressly governed by California law. The Prima Agreement also provides that "[t]he exclusive venue for any action under this Agreement shall be the county of the principal place of business of the defending party." (Prima Agreement at 18, attached as Ex. H to Schatz Dec.) In March 2001, defendant Random House, Inc. ("Random House"), a Delaware Corporation with its principal place of business in New York City, acquired Prima.

The Dune 2000 video game is designed for use with the Sony PlayStation video game system, which was developed by Sony Computer Entertainment America, Inc. ("SCEA"), a Delaware corporation with its principal place of business in California. The physical discs for the Dune 2000 game are produced by Sony Disc Manufacturing ("SDM"), a division of defendant Sony Music Entertainment, Inc. ("Sony"), a Delaware corporation with its principal place of business in New York City. SDM's principal place of business is in Indiana.

The remaining defendants are Wal–Mart Stores, Inc. ("Wal–Mart"), a Delaware corporation with its principal place of business in Arkansas; Best Buy Company, Inc. ("Best Buy"), a Minnesota corporation with its principal place of business in

Minnesota; CompUSA ("CompUSA"), a Delaware corporation with its principal place of business in Dallas, Texas; Electronics Boutique, Inc. ("EB"), a Pennsylvania corporation with its principal place of business in Pennsylvania; and KB Toys, Inc. ("KB"), a Delaware corporation with its principal place of business in Massachusetts (collectively, the "Retail Defendants" and together with the other defendants described above, the "Defendants"). These Retail Defendants distribute and sell the Video Games through retail stores in this District and across the country.

In June 2003, counsel for HLP, EA and Universal met to discuss an ongoing dispute over whether the Video Games and Strategy Guides violate HLP's copyrights and trademarks in the Dune Works. These three entities entered into a Tolling and Standstill Agreement (the "Tolling Agreement"), under which they agreed to engage in good faith settlement discussions and "not to file any legal claims or commence any legal action against the others in any forum until October 31, 2003." (Tolling Agreement dated June 30, 2003, attached as Ex. B to Schatz Dec.) The Tolling Agreement also provided that any applicable statutes of limitations relating to the dispute that had not yet expired by the date of the agreement would be tolled for the duration of the Tolling Agreement. The parties to the Tolling Agreement agreed to use the services of a mediator in California. Finally, the Tolling Agreement provided that it was to be construed under the laws of California and could be enforced only in federal courts in California or, if a federal court had no jurisdiction, then in California state courts.

On October 31, 2003, HLP filed a complaint in this district against Sony, SCEA and Random House for copyright and trademark violations, unfair competition, and violations of New York State business law. On November 5, 2003, EA filed an action in the Northern District of California (the "California Case") against Herbert Enterprises, LLC ("HE"), which EA believed to be the successor to HLP, seeking a declaration that the Video Games did not infringe any of HE's trademarks or copyrights. On November 6, HLP filed an amended complaint in this District which added EA and the Retail Defendants as named defendants and added New York State law claims for false advertising and deceptive business practices.

Defendants now move to transfer this case to the Northern District of California.

## II. DISCUSSION

### A. LEGAL STANDARD FOR MOTION TO TRANSFER

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion when deciding a transfer motion, and should base its ruling on "notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992).

▮ When deciding a § 1404(a) motion to transfer, therefore, the initial inquiry is whether the case could have been brought in the proposed transferee district, here the Northern District of California. *See Mattel, Inc. v. Robarb's, Inc.*, 139 F.Supp.2d 487, 490 (S.D.N.Y.2001). Once the defendant overcomes that threshold, courts generally consider nine factors to determine whether transfer is warranted: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of

unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. . *See Hutton v. Priddy's Auction Galleries, Inc.*, 275 F.Supp.2d 428, 441 (S.D.N.Y.2003); *Ayala–Branch v. Tad Telecom, Inc.*, 197 F.Supp.2d 13, 15.(S.D.N.Y.2002).

It is undisputed that HLP could have brought this action in the Northern District of California.

## B. *TRANSFER FACTORS*

### 1. *Convenience of Witnesses*

■ Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer. *See Mears v. Montgomery*, No. 02 Civ. 0407, 2004 WL 964093 (S.D.N.Y. May 5, 2004); *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y.1995). When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide. *See Foley v. Sammons Preston, Inc.*, No. 03 Civ. 5485, 2004 WL 35438 (S.D.N.Y. Jan.6, 2004); *Dealtime.com Ltd. v. McNulty*, 123 F.Supp.2d 750, 755 (S.D.N.Y.2000); *American Alliance Ins. Co. v. Sunbeam Corp.*, No. 98 Civ. 4703, 1999 WL 38183 (S.D.N.Y. Jan.28, 1999). Defendants, as they were obligated to do, *see Pilates*, 891 F.Supp. at 183, submitted a list of likely witnesses who would be inconvenienced by the continued litigation of this case in the present forum,

together with a general statement of each witness' testimony.

■ Defendants identify eighteen witnesses who are likely to testify and who would be inconvenienced by the forum in this District. Eleven of those witnesses are party witnesses or employees of parties. Of these eleven party witnesses and employees of parties, eight reside in northern California, two reside in Los Angeles, which is in the Central District of California, and one resides in Indiana. Defendants also indicate that no probable witness from EA, SCEA, Prima, or Universal resides in New York. The convenience of non-party witnesses generally carries more weight than the convenience of party witnesses. *See Transatlantic Reinsurance Co. v. Continental Ins. Co.*, No. 03 Civ. 3227, 2003 WL 22743829 (Nov. 20, 2003).

■ HLP argues that Defendants' witnesses are cumulative, and that the witness list conveys the impression that many more witnesses would be inconvenienced by the current forum than would actually be necessary at trial. A party seeking to transfer venue "may not artificially inflate the number of witnesses to be inconvenienced absent transfer by listing witnesses whose testimony is not material." *NBA Properties, Inc. v. Salvino, Inc.*, No. 99 Civ. '11799, 2000 WL 323257, at *7 (S.D.N.Y. March 27, 2000). Defendants' witness list contains, with some overlap, five current or former EA employees who would testify about the development of the Video Games, four current or former EA employees who would testify about Universal's approval process for the Video Games, and three current or former EA employees who would testify about the marketing and promotion of the Video Games. Defendants argue that because the scope of several licenses is at issue, the testimony of several individuals who nego-

tiated the licenses is relevant to determining the licenses' meaning.

HLP counters that not only are the witnesses that Defendants identify cumulative, but they also do not possess material information. HLP argues that its copyright claims can be resolved by this Court as a matter of law by interpreting the scope of HLP's grant of rights to Universal, and therefore EA's five witnesses who would testify to the development of the Video Games are essentially irrelevant. Defendants respond that the testimony of their witnesses is necessary to determine the scope of the grant of rights. But, more importantly, they point out that HLP alleges willful infringement of its copyrights in the Dune Works, and that HLP should receive enhanced damages because of these willful actions. On that added basis Defendants stress that the testimony of their proposed witnesses would be material to any determination of the willfulness of Defendants' conduct.

It may be true that not every witness identified on Defendants' list is material to the litigation. But even if five witnesses are not needed to testify about the development of the Video Games, the Court considers at least one of those five individuals necessary, and all of them apparently reside in California.

In its initial disclosures made pursuant to Fed.R.Civ.P. 26(a)(1), HLP identifies 31 individuals likely to have discoverable information that HLP may use in its case. HLP provides New York City addresses for eleven of these potential witnesses and California addresses for ten of them. HLP asserts that its non-party, New York-based witnesses, including its publisher, film, television and merchandising producer, and publicity and promotional personnel, will be necessary to establish its claims for trademark infringement, unfair competition, and false advertising, and that these witnesses will be inconvenienced

should the Court transfer this case to California. HLP argues that its witnesses will testify as to the strength of the trademarks in the Dune Works, the distinctiveness of the trademarks, and the degree of protection that the marks are due.

Although HLP correctly notes that to succeed in its trademark infringement claim it must establish elements such as the strength of the trademarks in the Dune Works and the likelihood of confusion as to the source of the Video Games in the eyes of consumers, it is not clear how material the testimony of the witnesses HLP identifies as New York-based would be to those inquiries. The strength of a trademark and the likelihood of confusion are often established by objective survey evidence or other indications of recognition by the general public rather than by typically self-serving testimony from a plaintiff's own agents (although surveys are certainly not required). *See 1–800 Contacts, Inc. v. WhenU.com,* 309 F.Supp.2d 467, 499 (S.D.N.Y.2003); *Citigroup Inc. v. City Holding Co.,* No. 99 Civ. 10115, 2003 WL 282202, at \*25 (Feb. 10, 2003); *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.,* 221 F.Supp.2d 457, 459 (S.D.N.Y. 2002). The testimony of HLP's own literary agents and promotional personnel may shed light on the advertising efforts exerted to promote the Dune Works, but a plaintiff's or plaintiff's agent's self-serving statements about the strength of the plaintiff's own trademark and the likelihood of confusion created by an allegedly infringing work will usually carry limited weight in the resolution of a trademark infringement claim.

Perhaps more importantly, although this litigation is styled principally as an action for trademark and copyright infringement, HLP's case essentially stands or falls on contract issues. It appears that ultimately, resolution of the dispute over Defen-

dants' liability will turn on the scope of the grant of rights in the Dune Works to Universal. If the Video Games and Strategy Guides did not exceed the scope of the grant of rights, then the sales figures for books in the Dune series—about which two of HLP's New York-based witnesses would apparently testify, for example—would be irrelevant. The witnesses HLP identifies as having knowledge of the negotiation of the 1995 Agreement are located in California and Seattle, Washington. Moreover, although HLP identifies as New York-based individuals the two principals of HLP—individuals who have knowledge of HLP licensed works, the relevant licensing agreements, and the strength of the relevant marks—closer scrutiny reveals that the address provided for these two individuals is in fact that of HLP's New York counsel. HLP's two principals actually reside in Washington State.

Given that this case will proceed either in New York or California, and that the parties have identified witnesses in both states, it is clear that some witnesses—party as well as non-party—will need to undergo the inconvenience of traveling across the country to testify at trial. On the whole, the Court concludes that more witnesses with more material testimony reside in California than in New York.

Both sides also identify witnesses who reside in neither state and who would have to travel regardless of the venue. The convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer. *See NBA Properties*, 2000 WL 323257, at *6; *Wechsler v. Macke Int'l Trade, Inc.*, No. 99 Civ. 5725, 1999 WL 1261251, at *6 (S.D.N.Y. Dec.27, 1999).

### 2. *Convenience of the Parties*

HLP is a Washington State limited partnership. HLP's general partner, Brian Herbert, handles day-to-day administrative activities of HLP from his home in Seattle. HLP asserts that it conducts virtually all of its business, including publishing, motion picture, and other commercial activities, from New York. HLP's literary agent, publisher, and motion picture production company are based in New York.

Defendants EA, which developed the Video Games, and SCEA, which developed the Sony PlayStation game system on which the Video Games can be operated, are Delaware corporations with their principal places of business in California. EA maintains a six-person regional sales office in New York, from which it manages business relationships with East Coast-based retailers. EA targeted New York, San Francisco and Los Angeles for a promotional campaign upon the debut of the Video Games.

Defendants Sony and Random House are Delaware corporations with their principal places of business in New York. But although Sony and Random House are headquartered in New York, no individuals in the New York offices of either corporation apparently have any information relevant to this lawsuit. Instead, the witnesses with material information appear to work for SDM, the Indiana-based division of Sony that manufactures the game discs, and Prima, the California-based division of Random House that created the Strategy Guides largely before it was acquired by Random House.

None of the Retail Defendants are incorporated or headquartered in New York or California. All the Retail Defendants have stores that sell the Video Games and/or Strategy Guides in New York and California.

HLP argues that it selected New York as the venue for this action in part because it conducts much of its business operations from New York, and because Sony and Random House are headquartered here.

Although several parties are located across the country and would have to travel regardless of the venue, more of them and more of their relevant divisions are located in California than in New York. Sony and Random House are the only two parties unquestionably located in New York, but the relevant witnesses from those parties are located in Indiana and California, respectively. Furthermore, although HLP obviously opposes this transfer motion, the Court notes that HLP's own principals reside in Seattle, which is thousands of miles and three time zones closer to California than to New York.

### 3. *Location of Relevant Evidence*

Defendants argue that the location of the relevant evidence supports transferring this case to California because the vast majority of the documents and other evidence concerning HLP's claims are located in California and none of that evidence is in New York. HLP correctly notes, as have many courts, that modern technologies such as photocopying and faxing permit any documents in California to be transported to New York with presumably minimal difficulty, and Defendants have made no showing of any particular burden that transferring the documents would entail. *See United States v. Nature's Farm Products, Inc.,* No. 00 Civ. 6593, 2004 WL 1077968 (S.D.N.Y. May 13, 2004); *Coker v. Bank of America,* 984 F.Supp. 757, 766 (S.D.N.Y.1997). Nonetheless, common sense suggests that retaining this case in New York imposes some incrementally greater burden, however slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in California. *See Nature's Farm Products,* 2004 WL 1077968, at *4. Accordingly, this factor weighs slightly in favor of transfer.

### 4. *Locus of Operative Facts*

Courts in this District have repeatedly held that "[i]n an action for trademark infringement and unfair competition, the initial forum is the locus of the operative facts if the allegedly infringing products are sold in that forum, even though the defendant manufactures the allegedly infringing product in the transferee forum." *NBA Properties,* 2000 WL 323257, at *4. HLP argues that because sales of the Video Games and Strategy Guides occurred in New York and because EA targeted New York as well as Los Angeles and San Francisco for promotional campaigns to increase sales of the Video Games, New York is the locus of the operative facts in this litigation.

Defendants acknowledge the general standard governing the locus of operative facts in trademark disputes, but they emphasize that other than sales of the Video Games and Strategy Guides, none of the events surrounding this action, such as the creation of the Video Games or Strategy Guides, Universal's approval of the games, and the negotiation and drafting of all relevant contracts, occurred in New York, and that in fact nearly all of those events transpired in California.

Because the allegedly infringing products were sold in this District, this Court must conclude that New York is the locus of operative facts. But because, other than sales of the Video Games and Strategy Guides—which were also conducted in California—no other relevant facts appear to have occurred in New York and the great bulk of those facts occurred in California, this factor will carry little weight in the Court's consideration of the transfer motion. *See Nabisco, Inc. v. Brach's Confections, Inc.,* No. 00 Civ. 5875, 2000 WL 1677935 (S.D.N.Y. Nov.8, 2000).

### 5. Availability of Process to Compel Attendance of Unwilling Witnesses

Defendants state that their list of probable witnesses includes many individuals located in California, which is outside the subpoena power of this Court. They argue that this factor strongly supports transfer because many of their witnesses are mere employees of parties rather than officers, and pursuant to Fed.R.Civ.P. 45(c)(3)(A)(ii), those employees should be treated no differently from ordinary non-party witnesses who must be subpoenaed to testify if they are unwilling to appear voluntarily.

In relevant part, Rule 45 instructs a court to quash or modify a subpoena if that subpoena "requires a *person who is not a party or an officer of a party* to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held." Fed.R.Civ.P. 45(c)(3)(A)(ii) (emphasis added). Several courts have interpreted this provision to mean that non-officer employees of a party are not considered to be parties but instead are non-party witnesses. *See Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 62 n. 4 (S.D.N.Y.1998); *St. Paul Fire and Marine Ins. Co. v. Royal Ins. Co. of America*, No. 91 Civ. 6151, 1993 WL 267347, at *1 (S.D.N.Y. July 12, 1993). Alternatively, other courts have simply stated, without any reference to Rule 45(c)(3)(A)(ii), that employees of a party are available in any venue by virtue of the employment relationship, and therefore the reach of a court's subpoena power over employees who do not reside in the forum is essentially irrelevant to a motion to transfer. *See Race Safe Sys., Inc. v. Indy Racing League*, 251 F.Supp.2d 1106, 1111 (N.D.N.Y.2003); *Praxair, Inc. v. Morrison Knudsen Corp.*, No. 00 Cv. 892E, 2001 WL 118585, (W.D.N.Y. Feb.6, 2001); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

The Court need not delve further into whether non-officer employees must be subpoenaed to testify, because Defendants have made no representation that any of their non-New York witnesses, whether or not they are employees of parties, are unwilling to testify in New York should the case remain here. *See Transatlantic Reinsurance Co.*, 2003 WL 22743829, at *5; *Kiss My Face Corp.*, 2003 WL 22244587, at *4. Accordingly, this factor is neutral.

### 6. Relative Means of the Parties

The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties. Defendants concede they are all large corporations, and they argue that HLP's means are not materially different from their own. They therefore assert that this factor has no bearing on the transfer motion. HLP argues that its resources are no match for those of the Defendants. HLP's average annual revenues for each of the past ten years have been under $750,000. Each Defendant's annual revenue for 2003 exceeded $1 billion. Given that the smallest Defendant's annual revenue appears to have exceeded HLP's annual revenue by a factor of more than one thousand in 2003, the Court recognizes that HLP may feel the pinch of litigating this action in California more than Defendants would if the case remains in New York.

### 7. Forum's Familiarity With Governing Law

HLP raises federal copyright and trademark claims and New York State statutory

claims. The federal court in the Northern District of California is certainly as familiar with the law governing the federal claims as is this Court. *See Intria Corp. v. Intira Corp.*, No. 00 Civ. 7198, 2000 WL 1745043, at *7 (S.D.N.Y. Nov.27, 2000). HLP's assertion of New York-based claims supports the retention of this case in this District, because this Court is presumed to be more familiar with New York law than a federal court in California, *see NBA Properties*, 2000 WL 323257, at *9, but that support is not as strong as HLP would like. Defendants assert, and HLP does not deny, that HLP has indicated to Defendants that if the Court transfers this case to the Northern District of California, HLP will abandon its New York claims and substitute analogous California state law claims.

### 8. Plaintiff's Choice of Forum

A court generally accords significant weight to a plaintiff's choice of forum. *See Intria*, 2000 WL 1745043, at *8; *NBA Properties*, 2000 WL 323257 at *9. However, the plaintiff's choice of forum receives less deference when that forum is not the plaintiff's home district and there is no material connection between either the plaintiff or the underlying transactions and the chosen forum. *See Intria*, 2000 WL 1745043, at *8; *NBA Properties*, 2000 WL 323257 at *9.

New York is not the home judicial district of HLP. HLP emphasizes its connections to New York by asserting that it conducts all of its business operations through agents and business associates in New York. HLP's publisher, marketing promoter, and television and motion picture production company are located in New York. That said, given that New York is not HLP's home district, and that apart from some sales of the allegedly infringing products none of the operative facts in this case occurred in New York, HLP's choice of forum will receive relatively little

weight. *See NBA Properties*, 2000 WL 323257 at *9.

### 9. Judicial Economy and Interests of Justice

Defendants argue that this case should be transferred to California in the interests of judicial economy because, they claim, it is likely that HLP will name Universal as a defendant, and the agreements between Universal and EA provide that California is the exclusive venue for disputes arising under those agreements. Defendants argue that this Court's retention of the case will result in judicial inefficiency because a separate litigation on the same subject matter will have to be initiated in California to resolve Universal's liability. But the Court cannot assume that additional parties will subsequently be added to this litigation. Universal is not now a party to this case, and the Court must decide the motion to transfer based on the situation now before it.

■ Both sides invoke the first-filed rule in support of their arguments to transfer this case to California or preserve it in New York. It is well settled that "where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first-filed of the two takes priority, absent 'special circumstances' or a balance of convenience in favor of the second." *Transatlantic Reinsurance*, 2003 WL 22743829, at *1.

HLP filed its complaint in the case at bar on October 31, 2003, several days before EA filed the California Case. HLP's initial complaint listed as defendants SCEA, Random House, and Sony. HLP amended the complaint on November 6, 2003 to add EA and the Retailer Defendants. HLP argues that the present case is the first action filed involving the alleged

trademark and copyright infringements at issue.

Defendants maintain that the California Case, which EA filed against HE (who it believed to be the successor to HLP), is the first filed case between EA and HLP involving the alleged trademark and copyright infringements because HLP did not add EA as a defendant in the instant case until after EA filed the California Case.

■ Courts do not mechanically apply the first-filed rule "where the first suit constitutes an 'improper anticipatory filing' or was motivated solely by forum shopping." *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 54 (S.D.N.Y.2001). Because the Court is persuaded that both of those situations exist here, the first-filed rule is not particularly helpful in resolving the motion to transfer.

■ An improper anticipatory filing is one "made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different [court]." *Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 (S.D.N.Y. 1995). An anticipatory filing is improper when "it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." *Id.* Here, HLP initially filed the present action in this District against several parties, but not against EA, on the day before the Tolling Agreement expired. While that agreement remained in effect, HLP could not name EA as a defendant, nor could EA initiate a suit for declaratory judgment against HLP. After the Tolling Agreement expired, EA filed the declaratory judgment action in California, and the next day HLP amended its complaint in this District to add EA as a defendant. The Court will consider the California Case to be an improper anticipatory filing although it was technically filed after the present case, because it appears to have been filed with the knowledge that HLP was about to add EA as a defendant in New York. (*See* Declaration of Ralph Sutton dated April 23, 2004 at ¶ 5.)

But HLP was no mere observer of this procedural chess match. HLP filed the present action in New York to take advantage of the longer New York statute of limitations applicable to unfair competition claims for Lanham Act violations. HLP has requested that if this Court transfers this case to California, it condition the transfer on a stipulation from Defendants that New York's statute of limitations apply to HLP's Lanham Act claims in California. The Court would no more reward this instance of forum shopping by HLP than it would EA's improper anticipatory filing. Accordingly, the Court finds the first-filed rule unhelpful in this case, and in the final analysis resolves the motion to transfer on the basis of the balance of conveniences that the two fora present. *See Reliance Ins. Co.,* 155 F.Supp.2d at 54; *Citigroup,* 97 F.Supp.2d at 555.

## C. BALANCING TEST RESULTS

■ Upon consideration of all of the above nine factors, the Court concludes that the proper course of action is to transfer this case to the Northern District of California. Two factors particularly guide the Court. First, more witnesses with more material information reside in California than in New York. Second, the bulk of the material operative facts pertaining to the parties' relationships, transactions and product development at issue in this case occurred in California, and except for sales of the allegedly infringing products—which also occurred in virtually every judicial district in this country—none of the operative facts occurred in New York. Essentially, the Court concludes that this case is a California-based action that, although permissibly filed in this District,

should more appropriately proceed in California in the interests of convenience and fairness.

The Court notes two additional considerations that, although not assigned any particular weight in this assessment, may have some bearing on the proper forum for adjudication of this action. First, prior to resorting to litigation in full throttle and gear, the parties commenced mediation proceedings in California, which efforts may still have some standing and prospects as alternative means to resolve this dispute. Should greater wisdom and prudence eventually prevail upon the parties during the course of litigation, and they then choose to pursue the mediation path, that option would likely occur more expeditiously and fare better were the litigation to proceed now in the forum where the framework for its alternative already exists. Second, were this action to continue in this District, in the event Defendants do decide to add Universal to the California Case a greater likelihood would exist of parallel litigation being conducted on two coasts over essentially the same dispute. Transfer to California would enable one forum to adjudicate all existing and potential claims; retaining the action in this District leaves open the prospect of additional litigation over still-looming disputes that could not be resolved here.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendants Electronic Arts, Inc., Sony Music Entertainment, Inc., Sony Computer Entertainment America, Inc., Random House, Inc., Wal–Mart Stores, Inc., Best Buy Company, Inc., CompUSA, Inc., Electronics Boutique, Inc., and KB Toys, Inc. to transfer venue of this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**