**ERES N.V., Plaintiff,**

v.

**CITGO ASPHALT REFINING CO. et al., Defendants.**

**No. 08 Civ 7313 (VM).**

United States District Court,
S.D. New York.

March 16, 2009.

474

Gina Maria Venezia, Peter Judge Gutowski, Freehill, Hogan & Mahar, LLP, New York, NY, for Plaintiff.

Stanley McDermott, III, David S. Wenger, Camilo Cardozo, Dla Piper US LLP, Paul D. Sarkozi, Hogan & Hartson LLP, New York, NY, Bruce D. Oakley, Hogan & Hartson LLP, Houston, TX, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Eres N.V. ("Eres") filed this maritime action on August 14, 2008, seeking to attach $78,122,812.33 in property belonging to defendants CITGO Asphalt Refining Company ("CARCO") and/or NuStar Asphalt Refining LLC ("NuStar Asphalt"). In the verified complaint, also dated August 14, 2008 (the "Complaint"), Eres brought suit against CARCO, Citgo Petroleum Corporation ("CITGO"), NuStar Asphalt, and NuStar Marketing ("NuStar Marketing") (collectively, "Defendants"), alleging that Defendants were in breach of a contract of affreightment originally entered into by Eres and CARCO.

NuStar Marketing now moves to transfer venue to the United States District Court for the Southern District of Texas (Houston Division). For the reasons described below, the motion to transfer venue is GRANTED.

## I. BACKGROUND[1]

Eres is a company based in Antwerp, Belgium. CARCO is based in Houston, Texas. In November 2004, Eres and CARCO entered into a contract of affreightment ("COA"), effective January 1, 2005, in which CARCO agreed to charter and Eres agreed to provide two tanker vessels for the shipment of a minimum of 3 million barrels of cargo a year, for a seven-year period. CARCO is a wholly-owned subsidiary of CITGO, which guaranteed CARCO'S performance of the COA in December 2004.

The COA provides that disputes arising under the COA "shall be arbitrated in the City of New York before a panel of three (3) neutral persons," and that "the law applicable to this Contract, its interpretation and the arbitration proceedings shall be the Federal Maritime Law of the United States, or where U.S. maritime law has not addressed a particular issue, the Law of the State of New York." (Complaint, Ex. 1 at 13.) The COA also provides that "[t]he arbitration clause of this charter party notwithstanding, disputes concerning non-delivery or damage to cargo may, at [CITGO's] option, be submitted for adjudication to the United States district court for the southern district of New York and both parties hereby submit to the jurisdiction of that court for such purposes." (*Id.* at 17–18.)

In November 2005, CARCO entered into a sale and purchase agreement (the "SPA") through which it sold certain asphalt-production assets to NuStar Asphalt, which is based in San Antonio, Texas. The SPA provided, among other things, that NuStar Asphalt would assume CARCO's rights and obligations arising out of certain contracts with third parties, referred to as Assumed Contracts. The

---

1. The following factual summary is derived primarily from the following documents: NuStar Marketing's Memorandum in Support of Its Motion to Transfer Venue, dated January 9, 2009 ("NuStar Mem."); CARCO and CITGO's Memorandum of Law in Opposition to NuStar Marketing's Motion to Transfer Venue, dated January 28, 2009 ("CITGO Mem."); Eres's Memorandum of Law in Opposition to NuStar Marketing's Motion to Transfer Venue, dated January 28, 2009 ("Eres Mem."); NuStar Marketing's Reply Memorandum in Support of Its Motion to Transfer Venue, dated February 4, 2009 ("NuStar Reply Mem."); and the declarations filed in support of these memoranda. Except where specifically referenced, no further citation to these documents will be made.

SPA was negotiated by Texas-based officials from both parties, and both parties were represented by Texas counsel. The SPA is governed by Texas law, and requires the parties to "bring any action or proceeding in respect of any Claim arising out of or related to this Agreement ... exclusively in any Federal or state courts located in Harris County, Texas." (Wenger Declaration ("Wenger Decl."), Ex. B, Section 10.10.)

In conjunction with the anticipated sale of CARCO properties to NuStar Asphalt, CARCO and NuStar Asphalt advised Eres that NuStar Asphalt would be taking an assignment of the COA. NuStar Asphalt later informed Eres that a separate subsidiary, NuStar Marketing, would be performing the COA. Eres expressed concerns about the relative newness of the NuStar companies, especially because CARCO's performance under the COA had been guaranteed by CARCO's parent company, CITGO. NuStar Asphalt therefore indicated that its parent company, NuStar Energy LLP ("NuStar Energy"), would extend a similar guarantee of performance of the COA.

On March 20, 2008, CARCO and NuStar Asphalt executed the Second Amendment to the SPA ("Second Amendment") and an assignment agreement ("Assignment Agreement"). The Second Amendment identified contract that would remain binding and enforceable on NuStar Asphalt ("Material Contracts"), as well as the Assumed Contracts (that NuStar Asphalt would assume), and listed the COA as a Material Contract and an Assumed Contract. The Assignment Agreement provided that CARCO assigned certain contracts, including the COA, to NuStar Marketing. CARGO, NuStar Marketing, and NuStar Asphalt also executed a guaranty to consummate the SPA and NuStar Marketing's assumption of the SPA (the "Guaranty").

In the Guaranty, NuStar Asphalt guaranteed the performance and obligations of NuStar Marketing arising under the COA.

The SPA required CARCO to deliver to NuStar Asphalt at the closing "a copy of each Third–Party Consent and Authorization" for a list of contracts "for which consent has been obtained." (Wenger Decl. Ex. B Section 2.4(a)(v).) This list included the COA. In a separate provision, the SPA also required CARCO to deliver to NuStar Asphalt the third-party consents to the contracts listed on Schedule 8.3(g) of the SPA "in a form reasonably satisfactory to" NuStar Asphalt. (Id. Section 8.3(g).) The SPA provided that this second consent requirement "may be waived by" NuStar. (Id. Section 8.3.) The Second Amendment deleted the COA from Schedule 8.3(g).

As of March 20, 2008, Eres had not executed the consent form provided for its confirmation of its agreement to the assignment of the COA, and NuStar Asphalt had not yet provided the guarantee of the COA's performance from NuStar Energy. After the closing, Eres was informed by CITGO that NuStar Asphalt had taken an assignment of the COA.

Eres personnel were scheduled to fly to the United States in April 2008 for a meeting with NuStar Asphalt regarding the assignment of the COA. NuStar cancelled that meeting a few days prior to the scheduled meeting date, but Eres personnel nevertheless traveled to NuStar Asphalt's offices, where they were informed that NuStar Asphalt was no longer interested in the COA because of negative news from their Venezuelan suppliers. NuStar Asphalt informed Eres by telephone on May 19, 2008 that it would not perform the COA.

Eres filed the complaint in this action, dated August 14, 2008 ("Complaint"), seeking to have the Court direct the Defen-

dants to arbitrate Eres's claim for breach of the COA. Eres also applied to this Court for an order directing the clerk to issue process of maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims ("Rule B"), and the Court issued that order on August 18, 2008.[2] On August 22, 2008, Eres served an arbitration demand on all four Defendants, and NuStar Asphalt and NuStar Marketing objected to the Court via a letter dated November 5, 2008.

On November 11, 2C3S, CARCO and CITGO filed suit against NuStar Asphalt and NuStar Marketing in Texas state court, pursuant to the SPA's forum selection clause, for breach of the SPA, the Assignment Agreement, and the Guaranty. CARCO and CITGO also sought a declaratory judgment that NuStar Asphalt and NuStar Marketing are obligated to defend and indemnify CARCO and CITGO for any exposure they have to Eres for the non-performance of the COA. NuStar Asphalt and NuStar Marketing removed the case to the District Court for the Southern District of Texas on December 11, 2008. CARCO and CITGO filed a motion to remand the case back to state court, which is still pending.

This Court held a conference on December 22, 2008, where the parties discussed, among other issues, the Texas suit. At the conclusion of the conference, the Court directed the parties to confer and present to the Court an outline of the issues to be resolved by the Court. By a letter dated December 23, 2008, the parties informed the Court that the issue before the Court was "whether Eres has a right to demand that the NuStar Defendants arbitrate Eres' breach-of-charter claims as a result of agreements allegedly reached between CITGO and NuStar Defendats." (Letter to the Court from Peter J. Gutowski, dated December 23, 2008, at 1.) The Court authorized limited discovery on the issue as described for a period of 90 days.

On December 23, 2008, NuStar Marketing and NuStar Asphalt filed their answers to the Complaint, as well as counterclaims for a declaratory judgment that the COA was not validly assigned to them and that they have no obligations to Eres under the COA. CARCO and CITGO filed their answer to the Complaint on January 9, 2009. NuStar Marketing filed this motion to transfer venue on January 9, 2009.

## II. DISCUSSION

### A. *LEGAL STANDARD*

■ "For the convenience of the parties and witnesses, in the interest of justice," a court may transfer a civil action to any district where the action "might have originally been brought." 28 U.S.C. § 1404(a). The initial inquiry in deciding a § 1404(a) motion to transfer is "whether the case could have been brought in the proposed transferee district." *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F.Supp.2d 282, 285 (S.D.N.Y.2004).

■ After that threshold determination has been made, courts consider the following factors in deciding whether a transfer is warranted: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the

---

2. Eres applied for a supplemental order incorporating an amendment to the process of attachment on October 1, 2008, after learning that an entity called NuStar Logistics acts as a paying agent for NuStar Asphalt. The supplemental order, dated October 2, 2008, authorized the issuance of supplemental process of maritime attachment and garnishment to include the property of NuStar Logistics in the attachment.

availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *See id.,* 325 F.Supp.2d at 285.

## B. *PROPER TRANSFEREE FORUM*

█ The parties do not directly address the issue of whether this action could have been filed in the Southern District of Texas. Eres seeks to have the Court "direct the parties to adjudicate the claim in arbitration in [sic] pursuant to the terms and conditions of the COA." (Complaint ¶ c.) NuStar Marketing asserts that the events giving rise to Eres's claim—specifically, NuStar Asphalt's alleged assumption of the COA through the SPA and the Assignment Agreement—took place in Texas. However, the COA contains a clause requiring that disputes arising under the COA "shall be arbitrated in the City of New York before a panel of three (3) neutral persons." (Complaint, Ex. 1 at 13.)

█ When considering a motion to transfer venue involving a forum selection clause, the forum selection clause is "a significant factor" to be weighed along with "a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). A forum selection clause does not, by itself, render venue in an alternative forum improper, as venue is improper only if the statutory venue requirements of 28 U.S.C. § 1391 have not been satisfied. *See GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.,* 198 F.R.D. 402, 405 (S.D.N.Y.2001).

If limited to Eres's request that the Court direct the parties to arbitrate the dispute pursuant to the COA, this suit could have originally been filed in the Southern District of Texas.[3] The statutory venue requirements would have been satisfied for a suit filed in the Southern District of Texas. "A civil action wherein jurisdiction is not founded solely on diversity of citizenship" can be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b). For the purposes of the venue statute, a defendant corporation resides in a judicial district where "it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

According to the Complaint, NuStar Asphalt and NuStar Marketing maintain offices and their principal places of business in West San Antonio, Texas, and CITGO maintains an office and its principal place of business in Houston, Texas. CARCO denies the allegation in the Complaint that it maintains an office and place of business in Pennsylvania, and observes in its opposition to the motion to transfer that CARCO documents are located in the Southern District of Texas. CARCO apparently has an office in the Southern District of Texas, which means that all four Defendants would have been subject to personal jurisdiction in Texas at the time the suit was filed, and venue in the Southern District of Texas, where CITGO resides, would be appropriate.

The Court also notes that a court in the Southern District of Texas would be able to compel Defendants to arbitrate in New York under the Convention on the Recognition and Enforcement of Foreign Arbi-

---

**3.** Eres would not have been able to obtain a maritime attachment of CITGO's property pursuant to Rule B in the Southern District of

Texas because CITGO can be found in that district.

tral Awards (the "Foreign Arbitral Awards Convention"), which controls international arbitration disputes. *See* 9 U.S.C. § 206; *Todd's Point Marine, Ltd. v. Rojos*, No. 96 CIV. 5827, 1996 WL 469667, at *2 (S.D.N.Y. Aug. 19, 1996) ("The Convention permits a court to 'direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.'" (*quoting* 9 U.S.C. § 206)).

## C. TRANSFER FACTORS

### 1. Convenience of Witnesses

 The convenience of witnesses is typically the most important factor when considering a motion to transfer. *See Herbert Ltd.*, 325 F.Supp.2d at 286 (citing cases). A court "must qualitatively evaluate the materiality of the testimony that the witnesses may provide" when assessing the convenience of witnesses. *Id.* NuStar Marketing contends that testimony by business and legal representatives of CARCO, CITGO, NuStar Asphalt, and NuStar Marketing regarding NuStar Asphalt's alleged assumption of CARCO's obligations under the COA and Eres's dealings with the Defendants will be needed. NuStar Marketing maintains that *"all* of the witnesses (party representatives and counsel) that the CITGO and NuStar parties would call . . . are in Texas" (emphasis in original) (NuStar Mem. at 8). NuStar Marketing argues that there are fourteen witnesses located in Texas, and that these witnesses will testify about the SPA and its related documents, as well as Eres's alleged failure to provide its consent to NuStar Asphalt's assumption of the COA.

NuStar Marketing does not differentiate between potential witnesses who live in the Southern District of Texas and those who might live in or near West San Antonio, Texas, where NuStar Asphalt and NuStar Marketing maintain offices, which is in the Western District of Texas. CARGO and CITGO argue that New York is the most central location for all of the parties, as Eres's place of business is in Antwerp, Belgium. Eres contends that NuStar Asphalt's list of witnesses and description of their potential testimony does not actually support a transfer because the only issue the Court needs to consider in determining arbitrability is whether NuStar Asphalt waived the requirement that Eres provide its consent to the assignment.

 It is certainly possible that testimony about the negotiations for the SPA and related documents, which NuStar Marketing argues would come partly from Houston-based witnesses, would be material. Although many of the relevant witnesses listed by NuStar Marketing reside in Texas, not all of the Texas witnesses reside in the Southern District of Texas. The convenience of witnesses who reside in neither the current nor the transferee forum is not relevant when considering a motion to transfer venue. *See Herbert Ltd.*, 325 F.Supp.2d at 288. The Court need not weigh the convenience of any Eres witnesses, or the convenience of any witnesses located in San Antonio. The Court therefore finds that more witnesses with potentially material testimony' reside in the Southern District of Texas than in the Southern District of New York, and that this factor weighs in favor of a transfer.

### 2. Convenience of Parties

NuStar Asphalt and NuStar Marketing are Delaware corporations that have their main offices in West San Antonio, Texas. Eres argues that NuStar Asphalt's representatives, including its CEO and president, often travel to New York on business.

Eres is based in Antwerp, Belgium, and Eres represents that it would be more

inconvenienced by having to send its representatives to Texas instead of New York. CITGO and CARCO are incorporated in New Jersey and Delaware and have offices in Houston. These parties prefer arbitrability to be decided by this Court.

The convenience of the parties weighs partly in favor of a transfer because all of the defendants are based in Texas. Although NuStar Asphalt and NuStar Marketing are based in the Western District of Texas, they are still much closer to the Southern District of Texas than to the Southern District of New York.

However, the convenience of the parties also weighs partly against a transfer because Eres, CARCO, and CITGO all prefer to have the COA's forum selection clause, in the form of the arbitration provision, enforced. *See Stewart Org.,* 487 U.S. at 29, 108 S.Ct. 2239 (forum selection clause can be considered under convenience prong as an evaluation of "the parties' expressed preference for [a, particular] venue").

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

■ NuStar Asphalt contends that the location of the relevant documents favors a transfer because those documents are in the CITGO and NuStar Asphalt offices in Texas. However, many courts have noted that documents may be transferred from one district to another district across the country with little difficulty, using electronic means of duplication and transmission. *See, e.g., Herbert Ltd.,* 325 F.Supp.2d at 289 (citing cases). There is no suggestion that the documents involved will be very voluminous or difficult to convert into electronic form for electronic distribution, or otherwise difficult to send to the Southern District of New York. Ac-

cordingly, this factor does not support a transfer.

### 4. Locus of the Operative Facts

■ "The location of operative events is a primary factor in determining a motion to transfer venue." *Bank of Am., N.A. v. Hensley Properties, LP,* 495 F.Supp.2d 435, 440 (S.D.N.Y.2007) (quoting *ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 279 (S.D.N.Y.2000)). Eres filed this action so that it could request that the Court attach the Defendants' assets pursuant to Rule B, as well request that the Court direct the parties to arbitrate, pursuant to the arbitration clause in the COA. With respect to the NuStar parties, the arbitrability of the claim in New York depends on whether NuStar Asphalt took an assignment of the COA pursuant to the SPA and its related documents. CITGO and CARCO's obligations under the COA depend on the same issue.

■ In an action arising out of a contract, the location of the operative facts is "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Oubre v. Clinical Supplies Management, Inc.,* No. 05 Civ.2062, 2005 WL 3077654, at *4 (S.D.N.Y Nov. 17, 2005) (citation omitted). NuStar Asphalt contends that the events giving rise to Eres's claim took place in Texas because the SPA was negotiated, executed, and implemented by the Defendants' representatives in Texas. CARCO and CITGO argue that the arbitration clause of the COA should be given greater weight because this is a maritime action, and the location of the events giving rise to this action is less relevant. Eres argues that because there are a limited number of documents relating to the assumption of the COA and no physical evidence or conduct making the location of the events in question relevant, the loca-

tion of the events does not warrant a transfer to Texas.

The Court notes that it is not clear whether the SPA was executed or negotiated in the Southern District of Texas or the Western District of Texas, or both, although it does appear that the operative facts took, place in Texas, and not within the Southern District of New York. This factor weighs in favor of a transfer because at least some of the operative events most likely did take place in the Southern District of Texas, and there is no indication that any of the operative events took place in New York. The Court does not accept the argument that the location of the operative events should not be given their normal weight in this situation, as the matter before the Court clearly turns on the events surrounding the SPA and its related agreements, events that unquestionably took place outside of the Southern District of New York.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

■ The parties have not identified any potential non-party witnesses whose testimony could be obtained only through a subpoena. The witnesses that have been identified are employees of the parties or counsel for the parties. *See Micromuse; Inc. v. Aprisma Mqmt. Techns., Inc.,* No. 05 Civ. 0894, 2005 WL 1241924, at *5 (S.D.N.Y. May 24, 2005) ("Because the parties can compel their own employees to testify without the need for a subpoena, the location of party witnesses is irrelevant to consideration of this factor.") In addition, the Court has not been provided with affidavits from witnesses stating that those witnesses would not voluntarily testify, and there has been no indication that deposition testimony is not a viable alternative. *See NBA Properties, Inc. v. Salvino, Inc.,*

No. 99 Civ. 11799, 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (citing cases). This factor does not weigh in favor of a transfer.

### 6. Relative Means of the Parties

■ "The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Herbert Ltd.,* 325 F.Supp.2d at 290. All of the parties agree that the relative means of the parties have no bearing on the transfer motion.

### 7. Comparative Familiarity of Each District with the Governing Law

■ NuStar Asphalt contends that the proposed transferee forum's familiarity with Texas law supports a transfer because the issues surrounding the negotiation, execution, and implementation of the SPA are governed by Texas law. Eres maintains that unless the issue involved implicates a complicated matter of local law, this factor should carry-little weight because this Court is capable of applying the law of another jurisdiction. CARCO and CITGO argue that the issue to be decided by the Court is the arbitrability of the COA, which would require the application of federal maritime law or New York law, as specified by the COA, and that this Court is more qualified to perform that analysis.

To determine whether CARGO, CITGO, NuStar Asphalt, or NuStar Marketing should be compelled to arbitrate pursuant to the COA, this Court would need to determine whether the COA was validly assigned to NuStar Asphalt or NuStar Marketing. This task requires an assessment of the SPA and its related agreements, and the SPA is governed by Texas law. A federal court in Texas is presumed to be more familiar with Texas law than a

federal court in New York. *See NBA Properties,* 2000 WL 323257, at \*9. Accordingly, this factor weighs in favor of a transfer.

### 8. *Weight Accorded to Plaintiff's Choice of Forum*

■ The plaintiff's choice of forum is ordinarily accorded relatively greater importance than the other factors in the motion to transfer analysis, but not when the operative facts have few meaningful connections to the plaintiff's chosen forum. *See Kreinberg v. Dow Chem. Co.,* 496 F.Supp.2d 329, 330 (S.D.N.Y.2007). As discussed above, the operative events took place in or much closer to the Southern District of Texas than this District. There is no apparent connection between the Southern District of New York and the operative events, and Eres's choice of New York as its forum will therefore not receive the deference normally accorded to the plaintiff's forum choice. *See Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,* 415 F.Supp.2d 370, 376 (S.D.N.Y.2006).

### 9. *Judicial Economy and the Interests of Justice*

■ To produce a ruling on the narrow issue of whether the COA was validly assigned to NuStar Asphalt or NuStar Marketing, this Court would need to interpret the SPA, the Assignment Agreement, and the Guaranty, as well as the parties' actions surrounding the execution of all of those documents. This is essentially the same analysis that the court in the Southern District of Texas will perform when it considers CARCO and CITGO's claims of breach of the SPA, the Assignment Agreement, and the Guaranty. Judicial economy and the interests of justice support a transfer because a transfer would allow one court to perform a full analysis of the documents and the circumstances surrounding their execution, and that court

can then render one ruling interpreting all of the contracts in their entirety.

The interest in allowing one court to render a judgment based on its own complete interpretation of the documents and the parties' related conduct, is not an abstract one. In *Coady v. Ashcraft & Gerel,* the Court of Appeals for the First Circuit considered an appeal involving a suit filed in the District Court for the District of Columbia; an application for arbitration in Massachusetts state court that was removed to the federal district court for the District of Massachusetts; and a subsequent arbitration proceeding in Massachusetts. *See* 223 F.3d 1 (1st Cir.2000). The Massachusetts district court had identified limited areas subject to arbitration and ordered that the arbitration proceed; meanwhile, the District of Columbia district court denied a motion for a stay pending the arbitration, such that two federal district court actions proceeded in different venues "between the same parties ... on essentially the same subject matter," even as the arbitration in Massachusetts continued. *Id.* at 4. The First Circuit was faced with "different proceedings involving the same case in two different federal courts and at least an arguable inconsistency in the outcomes," *id.* at 6, and the court remanded the case to the Massachusetts District Court with instructions to transfer the action to the parallel proceeding in the District Court for the District of Columbia.

The interests of justice and judicial economy very much support a transfer, which will prevent a situation similar to the one in *Coady* from emerging with this litigation. In addition, if this Court were to keep this action and rule upon the assignment issue, issues of claim preclusion and issue preclusion would inevitably arise with respect to the proceeding in the Southern District of Texas.

## D. *BALANCING TEST RESULTS*

The balance of the first eight factors favors a transfer of this action: the convenience of the witnesses, the location of the operative facts, and the comparative familiarity of the Southern District of Texas with Texas law all support a transfer, while the convenience of the parties and the plaintiff's choice of forum weigh against a transfer, but not to a significant degree. In addition, considerations of judicial economy and the interests of justice strongly favor a transfer. Although Eres argues that it should not be compelled to litigate its claim in a Texas court, the COA's arbitration provision requiring arbitration in New York is merely one factor in the entire transfer of venue analysis. The overall balance of the facts here supports a transfer.

The Court notes that the arbitration proceeding required by the COA is governed by the Foreign Arbitral Awards Convention, which provides that "the district courts of the United States ... shall have original jurisdiction." 9 U.S.C. § 203. Once this case is transferred to the Southern District of Texas, it shall remain there even if the related proceeding in the Southern District of Texas is remanded to the state court in Harris County, Texas. The federal court in Texas may then choose to stay the proceedings pending a ruling by the Texas state court, or the parties may apply for a stay.

## E. *ATTACHED FUNDS TO REMAIN IN GARNISHEE'S HANDS*

Although this case will be dismissed upon its transfer to the Southern District of Texas, pursuant to Rule B(3) any funds that have been attached shall remain in the hands of the garnishee until further order of this Court. This Court will direct the garnishee to hold the restrained assets until a subsequent order from this Court authorizes the disbursement of those assets. This action will be discontinued without prejudice to being reopened upon request of any of the parties for any necessary proceedings to enforce a judgment or arbitration award rendered in connection with a resolution of the merits of the dispute that is the subject of this action.

## III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 12) of defendant NuStar Marketing, LLC to transfer this action to the District Court for the Southern District of Texas is GRANTED; and it is further

**ORDERED** that any funds that have been restrained pursuant to the Court's orders authorizing issuance of process and maritime attachment and garnishment, dated August 19, 2008 and October 2, 2008, shall be maintained in the hands of any garnishees subject to further order of this Court; and it is further

**ORDERED** that this action may be reopened in the future upon request of any of the parties for any necessary proceedings to enforce a judgment of arbitration award rendered in connection with a resolution of the merits of the dispute that is the subject of this action.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**