IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30325

_____


LIVERPOOL AND LONDON STEAMSHIP PROTECTION AND INDEMNITY
ASSOCIATION LIMITED

        Plaintiff - Appellant,


       v.

QUEEN OF LEMAN MV, (ex-Madeira I), Official No. 26656-
PEXT, her engines, tackle, apparel, furniture, etc.; ET AL

        Defendants
_____

FUJI VEGETABLE OIL, INC

        Plaintiff - Appellee

TOKIO MARINE AND FIRE INSURANCE COMPANY LIMITED

        Intervenor Plaintiff - Appellee


       v.

QUEEN OF LEMAN MV, her engines, boilers, tackle,
etc, in rem; ET AL

        Defendants


_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

No. 01-31142

LIVERPOOL AND LONDON STEAMSHIP PROTECTION AND INDEMNITY ASSOCIATION LIMITED

Plaintiff - Appellee,

v.

M/V ABRA, (EX KAPPA UNITY), in rem

Defendant - Appellant

INTERFORCE SHIPPING LIMITED

Claimant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

June 27, 2002

Before SMITH, BENAVIDES, and PARKER, Circuit Judges.

BENAVIDES, Circuit Judge:

These consolidated appeals involve the interpretation of the choice of law provisions of an insurance contract. The essential question in both of these cases is whether English or United States law determines the existence of a maritime lien for unpaid insurance premiums. Two district courts provided conflicting answers to this question. For the reasons that follow, we conclude that United States law governs.

I.

Liverpool and London Steamship Protection and Indemnity Association ("L&L") is an English mutual insurance association that provided protection and indemnity ("P&I") insurance to the owners and operators of the M/V QUEEN OF LEMAN. Under the terms of the P&I contract, L&L had certain rights to assert liens for the collection of unpaid premiums. On May 2, 1999, L&L filed a verified complaint in the Eastern District of Louisiana to seize the vessel for unpaid insurance premiums under Rule 9(h) and Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims. The district court granted the request and issued an order authorizing the arrest and seizure of the QUEEN OF LEMAN. On August 12, 1999, the vessel was sold for $512,000, which was placed in the registry of the district court. L&L was not alone in asserting liens against the QUEEN OF LEMAN. Two of the additional parties seeking to recover from the proceeds of the sale were intervenor Tokio Marine and Fire Insurance Company. Ltd. ("Tokio"), who had insured the ship's cargo, and Fuji Vegetable Oil, Inc. ("Fuji"), who owned the cargo. To this end, Tokio and Fuji filed a motion for summary judgment, arguing that L&L did not have a maritime lien for unpaid insurance premiums under Rule C. Their argument was essentially that the P&I insurance contract called for the application of English substantive law, which did not give L&L a maritime lien. The district agreed, and granted summary judgment in favor of Tokio and Fuji. L&L timely appealed.

The interpretation of the L&L insurance contract was also at issue in another case, filed in the Middle District of Louisiana. In that case, L&L provided P&I insurance for the M/V ABRA (ex KAPPA UNITY), a Cyprus flag bulk carrying cargo vessel, who was entered with L&L as part of a fleet entry, along with several other separately owned vessels managed by Kappa Shipping Company, Ltd. ("Kappa"). During the policy years 1994-1999, Kappa allegedly became delinquent on premiums totaling $829,509.66 for the fleet and $229,102.16 attributable to the KAPPA UNITY.

In the spring of 2000, Interforce Shipping Ltd. ("Interforce") purchased the vessel. It claims that it had no knowledge of Kappa's outstanding debt. On February 9, 2001, L&L filed a complaint in district court, pursuant to which a warrant of maritime arrest was issued. A few days later, the complaint was amended to include the debt for the entire fleet. Interforce appeared as a claimant of the vessel pursuant to Rules C and E to defend against L&L's in rem claim for unpaid premiums. It moved for a post-seizure hearing to contest the ship's arrest. The district court ultimately upheld the arrest, determining that, pursuant to the contract, United States law governed the existence of a maritime lien. Subsequent to the district court's decision, Interforce learned of the QUEEN OF LEMAN case, in which the identical issue was presented. It moved for reconsideration and/or certification for interlocutory appeal. L&L consented to the request for certification, and the district court then certified the choice of law issue for immediate interlocutory appeal.

We consolidated these cases for the resolution of the choice of law issue, which we now address.

## II.

These cases come to us at different procedural postures. In the QUEEN OF LEMAN case, we review the district court's entry of summary judgment. The ABRA case, however, involves the district court's determination of the legality of a ship's arrest at a post-seizure hearing. This difference in procedural posture does not affect our interpretation of the contract rules, which presents purely legal issues that we review de novo. *Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine P'ship, Ltd.*, 274 F.3d 249, 252 (5th Cir. 2001).

## A.

The determination of whether English or United States law applies requires examining the

interplay of rules serving three functions: the creation of liens, the explicit choice of law, and the enforcement of liens in foreign jurisdictions. The parties agree that English law generally governs the contract. Moreover, they agree that the procedure for enforcing liens is controlled by the law of the foreign jurisdiction in which the lien is being enforced. Their disagreement concerns the issue of whether foreign law also determines the existence of a maritime lien. The difference is significant because even L&L admits that it would have no maritime lien under English law.[1] By contrast, under United States law, the Federal Maritime Lien Act, 46 U.S.C. §§ 31341-43 establishes a maritime lien for the provision of necessaries, which include marine insurance. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986) (en banc).

Under Rule 40 of the 1999 version of the contract,[2] L&L is entitled to "a lien on the ships of a member" for any unpaid premiums. Rule 48 provides that:

> These rules and any special terms of entry form a contract of insurance between the Association and a member, and subject to the right of the Association under Rule 47C to enforce its right of lien in any jurisdiction in accordance with local law in such jurisdiction, shall be construed in accordance with English law.

Rule 47 also contains language that affects the choice of law analysis, stating that disputes are to be resolved either by arbitration or "by the English High Court of Justice." Rule 47C, however, creates

---

[1]Under English law, L&L would have a lien against ships only to the extent that they were still the property of the debtor party. The central difference between a maritime lien and this personal right under English law is that a maritime lien is an in rem proceeding protecting a right that relates back to the time when it attached. As a result, the maritime lien remains with the ship even though the ship is transferred to another party. *See Trinidad Foundry v. M/V K.A.S. CAMILLA*, 966 F.2d 613, 615-16 (11th Cir. 1992) (quoting an English court on the difference between the maritime lien and the personal right afforded under English statute).

[2]The district court in the ABRA case referred to the 1999 rules, while the district court in the QUEEN OF LEMAN case relied on an earlier version. Although the applicable provisions are not significantly different, the 1999 rules are numbered differently than their predecessors. To avoid confusion and because it does not affect the analysis, we will refer to the 1999 numbering.

an important exception:

> Nothing herein shall affect or prejudice the right of the Association to take action and/or commence proceedings in any jurisdiction to enforce its right of lien on ships or to otherwise obtain security by seizure, attachment or arrest of assets for any amounts owed to the Association.

The parties agree that these three rules represent the relevant provisions of the P&I contract. Furthermore, they do not dispute that the contractual choice of law is valid. Our task is therefore to determine the scope of these choice of law provisions.

Fuji and Tokio argue that the reference to local law in Rules 47C and 48 is limited to the procedural aspects of enforcing liens. Specifically, Rule 47C refers to the right to "take action and/or commence proceedings[.]" Similarly, Rule 48 provides for English law, except "to enforce" the right of lien. In other words, according to Fuji and Tokio, the effect of these rules is that the substantive issue of what lien L&L may have is governed by English law. That right having been determined, however, L&L is free to enforce it in any local jurisdiction using local procedural law.

L&L argues persuasively that applying English law to the issue of the existence of a maritime lien would render Rule 40's grant of a "lien on ships" meaningless, as English law would not recognize a maritime lien. Moreover, it calls into question the relevance of the Rule 48 provision allowing for the enforcement of a lien in "any jurisdiction in accordance with local law." If English law controls and there is no maritime lien for unpaid insurance premiums, then L&L would have little need for enforcement provisions, as no right would exist to be enforced. Fuji and Tokio dispute this characterization, suggesting that Rule 40's "lien on ships" language applies not to maritime liens, but rather to "any type of seizure priority lien in the local jurisdiction under the local rules." Appellee's Brief at 8. This expansive reading is not supported by the structure of the contract and the language

of the other clauses. If the "lien on ships" referred to such a broad range of enforcement actions, then it would have been unnecessary for Rule 47C to refer to the enforcement of "its right of lien on ships *or to otherwise obtain security by seizure, attachment or arrest of assets*[.]" (emphasis added). This additional language suggests that the right of "lien on ships" refers narrowly to an in rem action rather than any type of seizure priority lien. We therefore agree with L&L that in order to give meaning to the entire contract, the determination of whether a maritime lien exists in the first place should be determined by United States law.

This reading of the P&I rules is consistent with this circuit's caselaw interpreting similar policies. Fuji and Tokio's reliance on *Sembawang Shipyard. Ltd. v. Charger, Inc.*, 955 F.2d 983, 986 (5th Cir. 1992) is misplaced. The contract at issue in that case provided for the application of Singapore law to "any dispute." *Id.* In fact, the court specifically noted that the contract could have, but did not, distinguish between in personam and in rem actions. *Id.* By contrast, the P&I rules at issue here do include such a distinction. Similarly, the contract at issue in *Ocean Marine Ins. Ass'n Europe O.V. v. M/V Lia*, 1999 WL 679671 (E.D. La. Aug. 27, 1999), is also distinguishable. Unlike the L&L P&I rules, it did not qualify the general choice of English law with the explicit exception to allow for asserting liens in foreign jurisdictions. *See id.* at 2; *see also Bolongon v. M/V NOR ATLANTIC*, 1999 WL 804070 (E.D. La. Oct. 5, 1999) (applying English law to issue of existence of maritime lien in absence of exception for asserting liens in foreign jurisdictions).

We also reject Fuji and Tokio's suggestion that the application of United States substantive law would lead to uncertainty and undermine the goal of uniformity in maritime law. They argue that by resorting to the substantive law of foreign jurisdictions, a maritime lien would appear and disappear as the ship sailed to different jurisdictions that might or might not recognize such a lien.

We do not share their concern.  We note that the existence of a maritime lien would only change as the ship entered a jurisdiction that granted more expansive rights than English law.  Moreover, there is nothing absurd about applying the law of the jurisdiction into which the ship sails, as the ship's presence in the jurisdiction represents a substantial contact.  Therefore, having determined that local law controls the existence of a maritime lien, we disagree that this interpretation would lead to nonsensical results.[3]

B.

Interforce argues that even if the contract calls for United States law to apply, it is not bound by this provision because it was not a party to the P&I rules.[4]  Instead, it contends that we should conduct a conflict of laws analysis, which would dictate the application of English law.  Interforce relies primarily, but unpersuasively, on *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield*, 658 F.2d 363 (5th Cir. 1981).  It characterizes *Gulf Trading* as holding that because a maritime lien arises by operation of law, not by contract, the P&I choice of law provisions do not bind those who are not parties to the contract.  *Gulf Trading*, however, does not control the outcome here.  In that case, the court applied a conflict of laws analysis to the issue of a maritime lien.  *Id.* At 367-68.  In doing so, it declined to use the conflicts analysis appropriate to contracts, *see* Restatement (Second) Conflicts

---

[3]We also reject Fuji and Tokio's argument that L&L was forced to obtain an arbitration award before bringing this action.  The arbitration provision clearly applies only to actions by members, not by the Association.  *See* 1999 Rule 47A.

[4]L&L argues that Interforce has waived this argument.  Although Interforce referred to it only vaguely at best in its brief at the district court, we note that the argument presents purely legal issues and that Interforce did discuss *Gulf Trading*.  Therefore, because it does not change the result, we exercise our discretion to consider the argument.  *See Heci Exploration Co. v. Holloway*, 862 F.2d 513, 518 & n.7 (5th Cir. 1988) (stating that court has discretion to consider arguments raised for the first time on appeal).

of Law § 188, noting that the maritime lien was not contractual in nature. *Id.* at 366-68. Importantly, however, it noted that the contract at issue there did not have a choice of law provision governing the existence of a maritime lien. *Id.* at 368. In light of this distinction with the present case, we decline to read *Gulf Trading* as invalidating the parties' decision in the P&I rules to apply local law to the issue of the existence of a maritime lien. *See also Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 498-99 (5th Cir. 1992) (applying conflicts analysis in absence of any indication that contract dictated choice of law for existence of maritime lien).

Indeed, it would be anomalous to refuse to honor the parties' choice of law in the P&I rules as it applies to maritime liens. Interforce does not dispute that the contract governs other aspects of the maritime lien. For example, terms of price and quantity in the original contract dictate the size of the debt that gave rise to the lien. Interforce certainly could not escape the effect of the maritime lien on the grounds that it did not consent to those price and quantity terms. Likewise, Interforce's absence from the original contract negotiation does not prevent the choice of law provision from binding it. In sum, Interforce's argument proves too much, and is essentially an attack on the in rem nature of the maritime lien itself. The maritime lien having arisen as a result of the failure to pay a contractual debt, it attaches to the ship and binds subsequent owners such as Interforce. We therefore hold that L&L's maritime lien is enforceable against the ABRA even though Interforce was not a party to the P&I rules.[5]

III.

---

[5]We need not consider Interforce's argument that even under United States law, L&L is not entitled to a maritime lien for the portions of the unpaid premiums for Freight, Defense, and Demurrage coverage. The district court certified only the choice of law question for interlocutory appeal, and our resolution of this extra issue would be premature.

We interpret the P&I rules to provide generally for the choice of English substantive law, but to except from this choice of law the substantive issue of whether a maritime lien exists in the first place. Under the contract, that question, like the enforcement of such a lien, is to be determined by the law of the local jurisdiction. We therefore conclude that in this case the P&I rules call for the application of United States substantive law to determine the existence of maritime liens. Accordingly, we REVERSE the district court's grant of summary judgment in the QUEEN OF LEMAN case and REMAND the case for further proceedings. In the ABRA case, we AFFIRM the district court's resolution of the choice of law issue and conclude that Interforce is bound by this contractual provision.