# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 23, 2011

Lyle W. Cayce
Clerk

No. 10-30816

WILLIAM J. PREAU, III,

> Plaintiff – Appellee – Cross-Appellant

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

> Defendant – Appellant – Cross-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:

This case involves a coverage dispute between St. Paul Fire & Marine Insurance Company and William Preau, its insured. St. Paul appeals the district court's judgment, in which the court concluded that the commercial general liability policy issued by St. Paul covers Preau's claim for the damages he was required to pay in a misrepresentation lawsuit. We conclude that there is no coverage under the policy for the amounts at issue and therefore reverse the district court's judgment and remand for entry of judgment in favor of St. Paul.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case are not in dispute. Dr. William Preau was a shareholder in Louisiana Anesthesia Associates ("LAA"), which provided

No. 10-30816

anesthesia services to the Louisiana Regional Medical Center ("LRMC").  In late 2000 or early 2001, Preau and the other LAA shareholders learned that Dr. Robert Lee Berry, an LAA employee, may have been abusing Demerol and other narcotics.  On March 27, 2001, Preau and three other LAA shareholders signed a letter terminating Berry after he failed to answer a page while on duty and admitted to taking Valium.

Thereafter, Berry sought employment as a *locum tenens* (traveling physician) with an agency called Staff Care, Inc.  Just sixty-eight days after Berry's termination, on June 3, 2001, Preau penned the following recommendation letter to Staff Care:

> This is a letter of recommendation for Dr. Lee Berry.  I have worked with him here at Lakeview Regional Medical Center for four years.  He is an excellent anesthesiologist.  He is capable in all fields of anesthesia including OB, peds, C.V. and all regional blocks.  I recommend him highly.

Preau did not disclose Berry's drug use or termination in the letter.  In October 2001, Berry sought privileges at Kadlec Medical Center ("Kadlec") in Washington State.  In addition to other documentation, Kadlec reviewed and relied upon the recommendation letter Preau had written in granting Berry privileges to practice at Kadlec.  On November 12, 2002, Berry failed to properly administer anesthesia to a patient, Kimberly Jones, because he was under the influence.  As a result of Berry's error, Jones remains in a permanent vegetative state.

Jones sued Kadlec, Berry, and LAA, among others, in a Washington state court (the "Jones Suit").  She voluntarily dismissed LAA prior to service due to a perceived lack of personal jurisdiction.  Kadlec ultimately settled with Jones for $7.5 million, after incurring approximately $744,000 in attorney's fees defending the Jones Suit.  Kadlec then brought suit against LRMC, LAA, Preau, and other LAA shareholders in the District Court for the Eastern District of

No. 10-30816

Louisiana (the "Kadlec Suit"), and a jury found that Preau had committed intentional and negligent misrepresentation by failing to disclose Berry's drug abuse and termination in his recommendation letter. The jury awarded total damages of approximately $8,244,000, which represented the amount Kadlec had paid to settle the Jones Suit plus the attorney's fees Kadlec incurred in defending that suit. This court affirmed the judgment on appeal. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 425 (5th Cir. 2008).

At the time Preau wrote the recommendation letter, LAA was insured under a commercial general liability policy (the "Policy") issued by St. Paul Fire & Marine Insurance Co. ("St. Paul"), which included coverage for the directors, trustees, executive officers, and shareholders of LAA. St. Paul agreed to defend the Kadlec Suit but reserved its right to deny coverage. After judgment was entered against Preau in the Kadlec Suit, St. Paul refused coverage under the Policy.

Preau brought this suit against St. Paul in a Louisiana state court, and St. Paul removed the suit to the District Court for the Eastern District of Louisiana. Both parties moved for summary judgment on the issue of coverage. St. Paul argued that the Kadlec judgment was not covered under the Policy because it was for economic damages stemming from Preau's misrepresentation and not "for covered bodily injury or property damage," as required by the Policy. Preau argued that the Kadlec judgment was covered under the Policy because it directly represented the damages Kadlec paid to Jones, which were for her bodily injuries. The district court agreed with Preau, holding that the portion of the Kadlec judgment attributable to Kadlec's settlement with Jones was for bodily injury and thus covered under the Policy.

Following a bench trial on the issue of whether the Policy's intentional-acts exclusion barred coverage, the district court found that St. Paul had not met its burden to prove that Preau intentionally caused bodily injury. The court

3

No. 10-30816

awarded Preau $502,650.42 in damages, which represented the principal amount that Preau paid to Kadlec, exclusive of pre- and post-judgment interest and the portion of the Kadlec judgment that represented Preau's share of Kadlec's attorney's fees in the Jones Suit.

The parties cross-appealed. St. Paul argues that the district court erred in holding that the damages in the Kadlec Suit were "for covered bodily injury," and, alternatively, that the Policy's intentional-acts exclusion bars coverage. Preau contends that the district court erred in calculating his damage award. Because we hold that Preau was not "legally required" to pay damages "for covered bodily injury," we do not reach the issues related to the intentional-acts exclusion and the calculation of damages.

## II.  DISCUSSION

The facts relevant to our decision are not in dispute; thus, we are concerned only with the proper interpretation of the policy language at issue. "A district court's interpretation of an insurance contract or provision is a question of law that we review de novo." *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011).

Louisiana law governs this diversity case. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) ("When, as here, jurisdiction is based on diversity, we apply the forum state's substantive law."). Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing La. Civ. Code art. 2047). "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage," *id.* (citing La. Civ. Code art. 2056), but the insurance contract "should

4

not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion," *id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

The Policy language at issue provides:

**Bodily injury and property damage liability**
We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
  * happens while this agreement is in effect; and
  * is caused by an event.

The pertinent issue is whether the damages that Preau was required to pay Kadlec are "for covered bodily injury." The Policy defines "bodily injury" as "any physical harm, including sickness or disease, to the physical health of other persons."

We hold that the damages in the Kadlec Suit are not covered under the plain terms of the Policy. Simply put, Preau was not "legally required" to pay damages "for covered bodily injury." Rather, Preau was "legally required" to pay Kadlec for the economic injuries it suffered as a result of Preau's misrepresentation. *Cf. Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 423–24 (5th Cir. 2008) (holding that "purely economic losses" were not covered under a similar commercial general liability policy). The economic damages Kadlec sought for Preau's tortious misrepresentation are distinct from the damages Jones or any other party might seek for her bodily injuries. The fact that *the amount* of the damages that Kadlec sought was directly related to the amount it paid to defend and settle the Jones Suit does not mean that Preau became legally required to pay for Jones's bodily injury.

No. 10-30816

We specifically recognized the distinction between Kadlec's economic injuries and Jones's bodily injuries in our prior decision in *Kadlec*. In that case, Preau argued that, although Kadlec had alleged negligent misrepresentation in its complaint, Kadlec's claim against him ought to be dismissed because the claim was properly characterized as a contribution claim—i.e., Kadlec was attempting to hold Preau liable for Jones's bodily injuries—which Preau argued was not permitted under Louisiana law. *Kadlec*, 527 F.3d at 425. We rejected Preau's contention, holding that the Kadlec Suit "is not a lawsuit asking for contribution or indemnity. It is a lawsuit that alleges breaches of duties owed to Kadlec." *Id*. Therefore, based on our prior determination, Preau became legally responsible in the Kadlec Suit for the breach of an independent duty he owed to Kadlec; he did not become legally responsible in the Kadlec Suit for Jones's bodily injuries. Because Kadlec suffered no bodily injury, Preau was not legally required to pay damages for bodily injury.

Preau cites three cases in support of his argument that, regardless of our prior determination regarding Kadlec's claim, the Policy nonetheless covers the claim. *See United Nat'l Ins. Co. v. Int'l Petroleum & Exploration*, 2007 WL 4561460, at *5 (D. Utah Dec. 20, 2007) (finding coverage where the insured's business partner sought contribution under the partnership agreement for the insured's share of damages paid to several injured employees); *Cincinnati Ins. Co. v. Robert W. Setterlin & Sons*, 2007 WL 2800383, at *8 (Ohio Ct. App. Sept. 27, 2007) (finding coverage for a claim against the insured related to an injury suffered by an employee of the insured's subcontractor because the subcontractor was "seek[ing] damages its employee sustained and it paid because of the employee's bodily injuries"); *Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life & Cas. Co.*, 524 F. Supp. 574, 578–79 (E.D.N.Y. 1981) (finding coverage for a claim against insured manufacturer of hair dyes by salon customer for amounts the salon paid to remedy injuries of those injured by the defective hair dye because

No. 10-30816

"[t]he circumstance that another has satisfied or incurred the damage claim voluntarily, forestalling litigation, does not, we think, remove the claim from the compass of the policy").  To the extent these cases could be construed to find coverage under the facts of this case, we reject them as unpersuasive.  *Cf. Johnson v. Evan Hall Sugar Coop.*, 836 So. 2d 484, 489 (La. Ct. App. 2002) (finding no coverage under a similar liability policy for an injured employee's spoliation claim against his employer after the employer destroyed an allegedly defective trailer because "[t]he claim [the employee] now asserts against [the employer] is for economic injury in the form of a reduced or eliminated recovery from third parties for their fault in causing his accident").  Moreover, these cases are most accurately characterized as cases in which the claimant sought contribution from the insured.  In this case, Kadlec's claim is based on a separate tort, and Kadlec did not seek contribution for Jones's bodily injuries.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for entry of judgment in favor of St. Paul.