**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 18 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| O.W. BUNKER MALTA LIMITED, | No. 13-55360 |
| Plaintiff - Appellee, | D.C. No. 2:12-cv-05657-R-FFM |
| v. | |
| MV TROGIR, her engines, boilers, tackles, etc., in rem, | MEMORANDUM[*] |
| Defendant - Appellant, | |
| And | |
| TROGIR MARITIME INC., Specially Appearing, | |
| Claimant - Appellant. | |

| | |
|---|---|
| O.W. BUNKER MALTA LIMITED, | No. 13-56124 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-05657-R-FFM |
| v. | |
| MV TROGIR, her engines, boilers, tackles, etc., in rem, | |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Defendant - Appellee,

And

TROGIR MARITIME INC., Specially
Appearing,

Claimant - Appellee.

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 12, 2015
Pasadena, California

Before: CALLAHAN, WATFORD, and OWENS, Circuit Judges.

O.W. Bunker Malta Limited (OWB) contracted with National Commodity Operators S.A. (NCO), the agent of the charterer of the M/V Trogir (the Vessel) to provide marine bunkers (or fuel) to the Vessel. The fuel was delivered to the Vessel on December 6, 2011, in Basuo, China. OWB was not fully paid for the fuel and when the Vessel docked in Los Angeles, OWB had the M/V Trogir arrested, asserting that it had a maritime lien. The owner of the Vessel, Trogir Maritime, Inc. (TMI) arranged for substitute security and the Vessel was released. On summary judgment, the district court determined that OWB had a maritime lien, but then issued an amended judgment concerning prejudgment interest. TMI appeals from the district court's finding of a maritime lien and OWB cross-appeals

from the amended judgment's treatment of prejudgment interest. TMI has not shown that the district court erred in holding that OWB had a maritime lien. Therefore, we affirm that determination. However, as the district court incorrectly applied the statutory rate of interest to partial payments made by third parties under contract, we vacate the amended judgment and remand for recalculation of damages.

**1.** We review the district court's grant of summary judgment *de novo*. *Trunk v. City of San Diego*, 629 F.3d 1099, 1105 (9th Cir. 2011). The district court, applying the three step standard set forth in *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1123–24 (9th Cir. 2008), first found that: (1) Croatian law is the governing law with respect to contract formation; and (2) under Croatian law the choice-of-law clause was incorporated into the contract because the parties were "sophisticated international shipping and supply companies," and the contract was entered into "at arm's length."

Having determined that the contract incorporated the choice-of-law provision, the district court had to determine whether OWB had acquired a maritime lien. The district court first considered whether under our precedent, the choice-of-law clause invoked United States law.

3

We noted in *Trans-Tec Asia* that "[a]bsent a strong showing that it should be set aside, the parties' choice of law provision, as part of a 'freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect.'" 518 F.3d at 1126 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972)). We further noted that in *Liverpool & London Steamship Protection & Indemnity Ass'n v. Queen of Leman M/V*, 296 F.3d 350, (5th Cir. 2002), the choice-of-law clause provided that the insurer could "enforce its right of lien in any jurisdiction in accordance with local law in such jurisdiction" and that the "Fifth Circuit declared that 'there is nothing absurd about applying the law of the jurisdiction into which the ship sails, as the ship's presence in the jurisdiction represents a substantial contact.'" *Trans-Tec Asia*, 518 F.3d at 1126 (quoting *Queen of Leman*, 296 F.3d at 353–54). We also observed that the language in the Federal Maritime Lien Act (FMLA), 46 U.S.C. § 31342, "is clear and unambiguous," and "imposes no restriction on the nationality or other identity of the supplier or the vessel, and no geographic restriction on the place of provision of the necessaries." *Trans-Tec Asia*, 518 F.3d at 1129. Pursuant to this precedent, the fact that the choice-of-law clause did not specifically refer to the laws of the United States did not restrict the

4

district court from giving effect to the contracting parties' intent and recognizing a maritime lien under the FMLA when the Vessel docked in Los Angeles.

Applying our precedent to the facts in this case, we conclude there is no question that OWB arranged for the fuel to be delivered, that the fuel was delivered to the Vessel, and that OWB was not paid in full. There is no evidence that OWB's use of an intermediary to deliver the fuel had any effect on the relationship between OWB and the charterer.

There is a presumption that a charterer may bind a vessel unless the vessel owner shows that the supplier had knowledge that the charterer could not bind the vessel. *See id*. at 1127–28; *see also Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743, 749 (5th Cir. 1985). Although the Chief Engineer, when signing for the fuel, placed a "no lien" stamp on the delivery receipts, this was not sufficient to give OWB notice that TMI had limited the charterer's authority to bind the Vessel.

We affirm the district court's determination that OWB properly asserted a maritime lien under the FMLA on the Vessel when it docked in Los Angeles, California.

**2**. While the district court did not abuse its discretion by awarding prejudgment interest at a statutory rate rather than any contractual rate, the court

5

incorrectly applied that rate to partial payments made by third parties under contract prior to the commencement of these in rem proceedings.

The charterer and its agent made partial payments to OWB. The district court correctly credited those payments first against interest and costs and second against the underlying principal owed by the Vessel. The district court went astray only insofar as it applied the statutory rate of interest not just to the sum owed by the Vessel, but also to the partial payments made prior to the commencement of these in rem proceedings. Because the statutory interest rate is so low, the district court's approach reduced the Vessel's obligation by almost the full amount of the partial payments. But in making those payments, the charterer and its agent were satisfying their in personam contractual debts to OWB, not in rem debts arising under a maritime lien. Because the partial payments were made against contractual debts, OWB was entitled to charge the contractual rate of interest (two percent per month) when calculating the in personam debt owed by the charterer and its agent. Under the higher contractual rate of interest, a sizeable portion of the partial payments pays down interest rather than principal, leaving a heftier portion of the Vessel's principal unpaid.

The partial payments in this case should reduce the principal owed by the Vessel only after they have fully offset *contractual* interest and costs. Whatever

6

sum remains is the principal owed by the Vessel, on which statutory interest began to run on January 4, 2012, when payment for the bunkers became due.

Accordingly, we vacate the district court's amended judgment and remand this case for recalculation of the amount owed by the Vessel to OWB. The contractual rate of interest applies to partial payments made by the charterer and its agent to OWB, prior to the commencement of these in rem proceedings, while the statutory rate of interest applies to the sum owed by the Vessel in this action.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**.

**Costs awarded to O.W. Bunker.**

*O.W. Bunker Malta Ltd. v. M/V Trogir*, Nos. 13-55360, 13-56124

WATFORD, Circuit Judge, concurring:

I agree with my colleagues that our decision in *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120 (9th Cir. 2008), requires us to affirm the district court's ruling that a maritime lien exists in favor of O.W. Bunker. But in my view *Trans-Tec* was wrongly decided. In holding that a maritime lien arose against the vessel, the *Trans-Tec* court gave effect to a choice-of-law clause in a contract between the materialman and the charterer, even though there, as in this case, neither the vessel nor the vessel owner was a party to the contract. *Id.* at 1126–27. In so holding, we purported to follow the Fifth Circuit's decision in *Liverpool and London Steamship Protection and Indemnity Ass'n Ltd. v. Queen of Leman MV*, 296 F.3d 350 (5th Cir. 2002). *Trans-Tec*, 518 F.3d at 1126. But we overlooked a basic fact of that case: While the Fifth Circuit did indeed give effect to a choice-of-law clause when deciding whether a maritime lien arose, the contract in that case was between the party claiming the lien (an insurer) and the vessel owner itself. *Queen of Leman*, 296 F.3d at 351. The Fifth Circuit's reasoning has no application in a case like *Trans-Tec*, which involved a non-party that neither knew about nor consented to the contractual provision at issue. *Trans-Tec*'s holding is in conflict with what our court had earlier described as "an obvious truism—nonparties cannot be bound by an agreement." *Gulf Trading & Transp.*

*Co. v. M/V Tento*, 694 F.2d 1191, 1196 n.8 (9th Cir. 1982).

In *Trans-Tec*, as here, we should have applied the factors specified in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), to decide the choice-of-law question, rather than relying on a contractual choice-of-law clause that did not (and indeed could not) bind either the vessel or the vessel owner.  If we applied the *Lauritzen* factors in this case, we would not uphold a lien in O.W. Bunker's favor.  Each of the countries whose law could potentially apply under *Lauritzen* does not recognize the maritime lien O.W. Bunker claims in this case.